## SIMMONS v. LEONARD.

### (*Nashville.* February 2, 1892.)

I. WILL. *Probate of. Sufficient attestation by subscribing witness.*

Although subscribing witness to will of realty did not attest it in the presence of the other witness, nor see the testator sign it, yet his attestation is sufficient if he signed at the request and in the presence of the testator, and after the latter's name had been attached.

Cases cited: Logue v. Stanton, 5 Sneed, 98; Rose v. Allen, 1 Cold., 24; Bartee v. Thompson, 8 Bax., 512; Beadles v. Alexander, 9 Bax., 606.

2. SAME. *Same. Insufficient attestation by subscribing witness.*

Although a will of realty is regular in form, having the testator's name attached and attested by two subscribing witnesses, yet it is invalid, if it is disclosed that the name of one of the subscribing witnesses was signed, at his request and in his presence, by a devisee under the will, and without the witness making his mark; and that the witness, who was partially blind, had no means of identifying the will as the paper to which his name had been attached; and that it is doubtful whether the testator had previously attached his name—the witness having attested the paper at the instance of the devisee, and out of the presence of the testator, the latter having previously requested witness to attest a paper of that character for him.

Code construed: §§ 3003, 48 (M. & V.); §§ 2162, 50 (T. & S.).

Cases cited: Ford v. Ford, 7 Hum., 96; Rose v. Allen, 1 Cold., 23; Jones v. Arterburn, 11 Hum., 98; Alexander v. Beadle, 7 Cold., 128; Maxwell v. Hill, 89 Tenn., 588; Guthrie v. Owen, 2 Hum., 202; Davis v. Davis, 6 Lea, 543.

---

### FROM MARSHALL.

---

Appeal in error from Circuit Court of Marshall County. ROBERT CANTRELL, J.

W. W. WALKER, P. C. SMITHSON, and W. N. COWDEN for Simmons.

JONES, & MURRAY, J. H. LEWIS, Z. W. EWING, W. LEONARD, and L. A. THOMPSON for Leonard.

CALDWELL, J. This is a contested will case. In February, 1877, Miss Margaret Simmons, who was both old and illiterate, died at her residence in Marshall County, leaving a valuable tract of land and some personalty. In March following a certain paper writing, alleged to be her last will and testament, and making disposition of her entire estate, was admitted to probate, in common form, in the County Court of that county. Dr. John M. Leonard, the principal devisee, was qualified as executor at the same time.

In July, 1887, D. P. Simmons, a brother, of the deceased, and other relatives filed a bill in the Chancery Court, alleging that the said instrument was not her last will and testament, and seeking an account with the executor.

In pursuance of the direction of the Chancellor in interlocutory order, complainants sought to make up and try an issue of *devisavit vel non* in the Circuit Court; but the Circuit Judge refused to take jurisdiction because of the pendency of the suit in the Chancery Court.

On appeal in error, this Court decided (5 Pickle, 622) that the Circuit Court, alone had jurisdiction to try an issue of *devisavit vel non*, and thereupon remanded the case.

The Honorable Circuit Judge thereafter tried the issue without a jury, and pronounced judgment in favor of the will. Contestants have appealed in error.

Our first inquiry shall be whether or not Eleazar Cochran and W. F. McDaniel, whose names appear on the propounded instrument as those of subscribing witnesses, make out a case of due and formal execution under the statute. How that is can be determined only by a careful consideration of what they say occurred at the time, the certificate to which their names are attached being in proper form and reciting all necessary facts.

McDaniel testified that he was notified by Dr. John M. Leonard that Margaret Simmons wanted him to witness her will; that he afterward went by Leonard's house, and they went together to her house; that she brought a paper out on the porch and told him she desired him to witness her will; whereupon, he then and there, in her presence and at her request, signed his name to the paper as a subscribing witness; that he, at that time, saw the names of Margaret Simmons, the testatrix, and Eleazar Cochran, the other subscribing witness, upon the paper; that no one was then present except the testatrix, Dr. Leonard, a small negro, and witness; and, finally, the paper in contest being produced, the witness said it was the same to which he subscribed his name, at the time and under the circumstances already detailed.

This witness shows himself to have been com-

petent, and by his testimony makes a case of due execution, so far as one subscribing witness can make it.

It was not at all necessary that he should see the testatrix sign the paper, nor that he should subscribe it in the presence of the other witness. *Logue* v. *Stanton*, 5 Sneed, 98; 1 Cold., 24; 8 Bax., 512; 9 Bax., 606; 2 Greenleaf on Evidence, Sec. 676; 1 Jarman (R. & T.), 212, 213; *Dewey* v. *Dewey*, 1 Metcalf, 349; *Jauncy* v. *Thorne*, 2 Barb. Ch., 40; *Burwell* v. *Corbin*, 10 Am. Dec., 494; *Ela* v. *Edwards*, 16 Gray, 92; 13 Gray, 110; *Ellis* v. *Smith*, 1 Vesey, Jr., 16; 2 Am. Dec., 624; 55 Am. R., 762; 4 Kent, *516; *Rosser* v. *Franklin*, 6 Grattan, 1 (S. C., 52 Am. Dec., 97).

Cochran, the other subscribing witness, died before the trial, and, therefore, could not be examined in the presence of the Court; but his deposition, which had been taken in the Chancery cause, was used as evidence in this case.

He deposed that he was a neighbor of Margaret Simmons, deceased; that Dr. John M. Leonard called on him twice and told him she wanted him to witness her will; that a negro man, living on her place, was subsequently sent for him, and he then went to her house; that he found her alone, and when he first got there she told him she wanted him "to sign a will" for her, though she did not then produce it, or say more about it; that Dr. Leonard afterward came and "got the will out of the bureau, or off the top of it," and

then at the request of witness signed the name
of witness to it; that this request was made by
witness because he was so nearly blind that he
could not see well enough to sign his own name;
that he, witness, did not have the will in his own
hands, or see the testatrix have it in her hands
at any time; that she did not sign it in his
presence, and he did not know whether she signed
it before he went to her house or after he left,
if at all; that he did not have the will read or
learn its contents.

His name, without more, is attached to the cer-
tificate. It is "Eleazar Cochran" simply, and not
"Eleazar $\overset{\text{his}}{+}$ Cochran," as is usual when a person
unable to $\overset{\text{mark}}{\text{write}}$ has another sign his name for
him. There is no mark or sign to indicate that
Cochran did not sign his own name, though the
fact is, as he states himself, that it was written
by Dr. Leonard at his request.

Clearly, Cochran was not a proper subscribing
witness. He was competent in the sense of being
disinterested, but the part he took in the execution
of the alleged will did not give him the full
character and functions essential to a subscribing
witness. His evidence does not establish such a
subscription as the law requires.

To constitute a valid will of real estate the
instrument must be subscribed by two witnesses at
least, neither of whom is interested in the devise.
Code (M. & V.), § 3003; 5 Pickle, 588; 2 Hum.,
202; 6 Lea, 543.

The attempted subscription by Cochran is incomplete because his name, being signed by another person, is not accompanied by some mark or sign indicating his adoption of that other person's act. This Court has gone no further in liberal construction of the word *subscribe* than to hold that a person whose name is written by another, and *who makes his mark thereto*, is a good attesting witness to a will. *Ford* v. *Ford*, 7 Hum., 96, 97.

Though a mark so made is held to be a sufficient subscription, it is never advisable, where it can be avoided, to employ marksmen as witnesses. 1 Jarman on Wills, 213.

It seems to have been deemed sufficient not only because the name of the witness is written by his authority, but also because in making his mark he has a share in the writing, as when another person guides his hand and he makes his own signature. *Chase* v. *Kittridge*, 87 Am. Dec., 694; *Jesse* v. *Parker*, 52 *Ib.*, 102; *Montgomery* v. *Perkins*, *Ib.*, 419.

By statute the word "signature, or subscription, includes a mark, the name being written near the mark and witnessed." Code, § 48.

There is even a greater objection, if possible, to Cochran as a subscribing witness. Though not interested in the devise himself, Dr. Leonard, who wrote his name for him, was the principal devisee under the will. This made the subscription utterly ineffectual. Cochran, though legally competent to become a subscribing witness, could not effectively

perform the act of subscription through another person, who was legally incompetent to become such witness in his own name and right. To permit the devisee to write the name of the subscribing witness would expose the will to little less danger of wrongful alteration and substitution than would exist if the devisee himself were allowed to become the witness; the same evil consequences would follow in the one case as in the other. If he may sign the name of one subscribing witness, he may sign the name of both, and in that way become a more potent factor in the execution and probate of the will than if he were allowed to become a subscribing witness himself. He may not, lawfully, take the matter so largely into his own hands. A proper construction of the statute excludes the devisee from the doing of any act, even for the subscribing witness, which is essential to a valid subscription.

Again, though identification has always been the main reason for requiring subscribing witnesses in the execution of wills, Cochran was not asked to identify the paper propounded in this case as the one he claims to have witnessed for Margaret Simmons. Presumably, he could not have done so if asked. Indeed, he shows affirmatively that he could not. He made no inspection of the instrument to which he requested Dr. Leonard to sign his name; did not have sufficient eyesight to inspect it. Hence, he could not afterward recognize it by its physical appearance. No name, mark,

or sign did he impress upon it that subsequent recognition might be assured, or even rendered possible. Nor was he informed of its contents, so that he might thereby preserve its identity in his memory. Of course it was not essential that the witness should be informed of the provisions of the will. *Higdon's Will*, 6 J. J. Marshall, 444 (S. C., 22 Am. Dec., 84); 2 Barb. Ch., 40; 16 Gray, 92; 13 Gray, 110; 1 Jarman, 213. Yet, if the information had been imparted, it might have served him as one means of future identification.

It was necessary, however, that something should occur, and that he should do some act (and that according to law), which, if remembered, would thereafter enable him to swear to the identity of the paper. If no such thing occurred, and no such act was done, then there was no valid subscription.

We do not hold that the fact of due subscription can be shown alone by the subscribing witness. On the contrary, it is well settled that such fact may be established by other persons, though his recollection fail him, or he become openly hostile to the will. *Rose* v. *Allen*, 1 Cold., 23; *Jones* v. *Arterburn*, 11 Hum., 98; *Alexander* v. *Beadle*, 7 Cold., 128; 1 Metcalf, 349; 2 Barb. Ch., 40.

But the proof of other persons will not suffice, unless it, in truth, shows that all formalities requisite to a valid subscription were observed. There is no such proof of other persons in this case.

Cochran states the whole transaction, so far as he had part in it, without lapse of memory or unfriendliness to the cause of proponent; and no one discloses any additional fact occurring at the time he is said to have subscribed the will.

Whether the paper propounded is the same he attempted to subscribe or a different one cannot possibly be determined from the completest narration of all that was then said and done. Speaking alone from the part he took in the matter, Dr. Leonard says it is the same. He recognizes his own handwriting in the name of the witness, and in that way, by something he did himself, and not by any thing the witness did, is enabled to make the statement.

The necessity and use of his evidence for so important a purpose furnish a striking illustration of the correctness of our conclusion that Cochran's attempted subscription was inoperative in law, because his name was written by a devisee under the will.

Aside from the questions already discussed, it is by no means clear 'that the paper referred to by Cochran was ready for subscription when he was called upon to witness it. He does not know, whether the testatrix had signed it or not. He did not see her signature, and no one told him it was on the paper.

Since it is the signature of the testator that subscribing witnesses are to attest, there can be no valid attestation or subscription unless it be a

fact that the testator has actually signed his name, or caused it to be signed, before they subscribe their names. There is no will to witness until it has been signed by the testator. *Chase* v. *Kittredge*, 11 Allen, 49 (S. C., 87 Am. Dec., 687). See also *Reed* v. *Watson*, 27 Ind., 448; 1 Jarman, 253, 254; *Shaw* v. *Neville*, 33 Eng. L. and Eq., 615; *Lewis* v. *Lewis*, 1 Kernan, 220; *Ragland* v. *Huntingdon*, 1 Iredell, 565; *John Cox's Will*, 1 Jones (N. C.), 324.

It is not essential that the testator sign his name in the presence of the subscribing witnesses, nor that they actually see his signature at all. *Ellis* v. *Smith*, 1 Vesey, Jr., 11; 1 Jarman on Wills (R. & T.), 212, 213; *Dewey* v. *Dewey*, 35 Am. Dec., 367; 16 Gray, 92; 13 Gray, 110.

The production of the will with his name signed to it, and in such a way that his signature may be seen by the witnesses, accompanied by a request of the testator that they witness it as his will, is a sufficient acknowledgment of the signature to render the will valid. *Ib.; Jauncy* v. *Thorne*, 45 Am. Dec., 432; 1 Jarman, 254.

In *Tilden* v. *Tilden*, 13 Gray, 110, the last of three subscribing witnesses neither saw the testator's signature nor heard him make any allusion to it. Yet, in that case, it was held that the words, "I wish you to witness this," constituted a sufficient acknowledgment, when considered in connection with the fact that the testator, who used the expression, at the same time presented to

the witness for attestation a paper which he had already signed as his will, and to which he had procured the names of two other witnesses, who did see his name before they signed their own names.

Giving the facts disclosed in this record the most favorable construction of which they are fairly susceptible, it may well be gravely doubted that the name of the alleged testatrix had been signed to the particular paper propounded at the time Cochran attempted to become a witness.

It is true she is shown to have said to the witness that she desired him "to sign a will" for her; but she did not say any thing about having already signed it herself, nor did she produce it then or afterward. After she made that request she seems to have done nothing, except acquiesce in the production of some paper from her bureau by another person, and its presentment by him to the witness for the latter's name—that other person being the principal beneficiary, and the supposed testatrix being old and illiterate.

Though allowed the same weight in this Court as the verdict of a jury (*Eller* v. *Richardson*, 5 Pickle, 576), the finding of the trial Judge, on the main question in this case, is without legal support. That the contested paper was duly executed as the will of Margaret Simmons is not established by sufficient competent proof. Ordinarily the testimony of one witness is entirely sufficient to sustain the finding of the Court or verdict of a jury

13—7 p

upon an issue of fact; but that rule is not controlling in a case like this, where the law requires two witnesses to make out the matter in issue.

The statute requires two competent subscribing witnesses in every devise of land, and nothing less than that will justify a judgment in favor of the will. The law prescribes the *quantum* of proof requisite in such a case; and neither the jury, nor Court sitting as a jury, is allowed to find in favor of the will on less evidence than that prescribed.

There is no dispute as to the facts with reference to Cochran's attempted subscription. Whether under those facts he was a competent subscribing witness is a question of law. We think he clearly was not. Then, in legal contemplation, there was but one subscribing witness, and the judgment in favor of the will was necessarily erroneous.

Reverse and enter judgment here.