In re ESTATE OF C.C. BRADLEY, Deceased.

Marceline T. HALE, Plaintiff/Proponent/Appellee,

v.

William B. BRADLEY, Robert Lee Bradley, and Thomas C. Bradley, Defendants/Contestants/Appellants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

April 24, 1991.

Permission to Appeal Denied by Supreme Court Sept. 23, 1991.

William R. Willis, Jr., Jeffrey Rappuhn Willis & Knight, Nashville, for appellee.

Tyree B. Harris, Baker, Worthington, Crossley, Stansberry & Woolf, Nashville, for appellants.

## OPINION

CANTRELL, Judge.

This action involves a contest of the Last Will and Testament of the decedent, C.C. Bradley, on questions of undue influence, proper execution and mental capacity. At the close of the contestant's proof, the trial judge directed a verdict in favor of the proponent on the grounds of proper execution and mental capacity. Thereafter, the jury returned a verdict in favor of the proponent on the remaining issue of undue influence. The contestants now appeal and raise two issues: Whether the trial judge properly directed a verdict on the issue of proper execution, and the propriety of the jury instructions on the claim of undue influence. We affirm the judgment as to the validity of the will.

Mr. Bradley's will was drafted in 1984 and left a portion of his estate in trust to his fiancee, Marceline T. Hale. The remainder of the estate, including the residuary of the trust upon Ms. Hale's death, went to Mr. Bradley's two sons. A third son received a token bequest of $10.00. After the will was drafted, it remained at Mr. Bradley's attorney's office, unexecuted, for two years.

In April 1986, Mr. Bradley's health was deteriorating and he was admitted to Williamson County Hospital. At Mr. Bradley's request, Ms. Hale got the will from the attorney's office and brought it to the hospital so it could be executed. Mr. Bradley asked Ms. Hale to go into the waiting room and find two witnesses. Ms. Hale then approached two ladies in the waiting room and asked them if they would witness Mr. Bradley's signature. When they returned to his room, Ms. Hale stated "these ladies are here to witness your signature." Everyone watched each other sign the will, and the witnesses signed the attestation clause. Mr. Bradley then thanked the witnesses, asked Ms. Hale if she had their addresses, and the ladies left the room.

Mr. Bradley died on May 3, 1986. His will was admitted for probate and named Ms. Hale, Robert L. Bradley and Thomas C. Bradley as co-executors. The will specified that $360,000.00 worth of municipal bonds were to be placed in trust and that Ms. Hale was to receive the interest from this trust during her lifetime. Ms. Hale was also given a life interest in Mr. Bradley's home. Upon her death, the corpus of the trust and the fee interest in the home would pass to Robert and Thomas Bradley.

Shortly after the will was admitted for probate, the testator's eldest son, William B. Bradley, filed a petition contesting its validity. After the cause was certified to the Circuit Court for trial, Robert and Thomas Bradley joined their brother as contestants of the will. The contestants alleged that the will was not properly executed, that their father was not mentally competent at the time of execution, and that Ms. Hale had exerted undue influence at the time of execution.

The matter was tried before a jury and, at the conclusion of the contestant's proof, the trial judge directed a verdict in favor of the proponent on the issues of proper execution and mental capacity. At the close of all the proof, the court instructed the jury on the remaining issue of undue influence. The jury was told that in deciding this issue, they may consider evidence which answers the following questions:

(1) Do the provisions of the Will prefer strangers in blood to the natural objects of the decedent's bounty?

(2) Does the Will unduly benefit the chief beneficiary thereof?

(3) Is there a variance between the terms of the Will and the expressed intentions of the testator?

(4) Was there an opportunity afforded by the chief beneficiary's relationship to the deceased to influence the decedent?

(5) Was the decedent's mental and physical condition such as to permit an overthrowing of his freedom of will?

(6) Was the chief beneficiary under the Will active in procuring it to be executed?

After giving the remainder of the charge, the judge told the jury that he did not mean to imply, nor was he implying, that Ms. Hale was the chief beneficiary of the will. The jury returned from their deliberations twice and asked to again be given the elements of undue influence. Each time, the judge concluded with the same reference to Ms. Hale as chief beneficiary. The jury eventually returned a verdict in favor of the proponent on the remaining issue of undue influence.

█ Among other things, proper execution of a will requires that the testator signify to the attesting witnesses that the instrument is his will. Tenn.Code Ann. § 32-1-104 (1984). At trial, the contestants took the position that this requirement was not met because neither Mr. Bradley nor Ms. Hale specifically told the two witnesses that the instrument was Mr. Bradley's will, but merely asked them to witness his signature. Thus, the argument on appeal is that there was sufficient evidence to go to the jury on the question of whether the testator signified that the instrument was his will, and that the trial court erred in directing a verdict on the issue of proper execution.

█ As a matter of law, it is not essential that an express request be made by the testator to the attesting witnesses that they witness the signing of his will. This may be implied from his acts and conduct, and from the facts and attending circumstances. *Miller v. Thrasher*, 36 Tenn.App. 88, 251 S.W.2d 446 (1952). In *Austin v. Cox*, 11 TAM 45–9, 1986 WL 9314 (Tenn. App., Middle Section, August 27, 1986), it was held that the act of the testator in signing the document was a declaration whereby he signified to all present that the document was his will. In that case, the attesting witnesses testified at trial that they could not remember if the testator told them the instrument was his will. But the witnesses saw the word "Will" printed on the document, and they assumed that that was what they were witnessing. Similarly, the ladies who witnessed Mr. Bradley's signature testified that they assumed the instrument was his will, although no one specifically told them it was such. Moreover, after these ladies left Mr. Bradley's room, they told their husbands that they had just witnessed the signing of a will. Under the facts and circumstances of this case, we conclude that, as a matter of law, the testator signified to the attesting witnesses that the document was his will.

The contestants argue that there was a conflict in evidence on whether the will was witnessed at the testator's request and that the trial judge erred in taking the issue of proper execution from the jury. In support of this argument, the contestants have referred us to *Fann v. Fann*, 186 Tenn. 127, 208 S.W.2d 542 (1948) and *Whitlow v. Weaver*, 63 Tenn.App. 651, 478 S.W.2d 57 (1970).

In *Whitlow*, the attesting witnesses testified at trial that they witnessed the document at the request of the testator but that he did not tell them it was his will, that he did not sign it in their presence, that it was so folded that they could not tell what it was, and that they did not read

the attestation clause. This testimony was in direct conflict with the wording of the attestation clause. In affirming the validity and proper execution of the will, the Court in *Whitlow* held that proof of genuine signatures of the testator and attesting witnesses, along with an attestation clause reciting that the will was properly executed, creates a rebuttable presumption of due execution. The Court went on to hold that the testimony of the witnesses denying the recitations of the attestation clause is admissible to rebut the presumption, making a directed verdict improper. Thus, the question of due execution becomes an issue of fact for the jury to decide. Similarly, *Fann* states the proposition that where the attesting witnesses' testimony contradicts the attestation clause, the evidence of proper execution must be clear and convincing.

The contradiction relied upon by the contestants is that the attestation clause recites that the will was witnessed at the testator's request, while the evidence shows that Ms. Hale actually requested the ladies to witness Mr. Bradley's signature. But it is well settled that the request to the attesting witnesses to act as such need not be given by the testator in person but may be given by a third person as his agent or representative. *Miller, supra,* 36 Tenn. App. at 94, 251 S.W.2d 446; *Howell v. Brown,* 7 Tenn.App. 380 (1928). Moreover, we conclude that the testator ratified this request when Ms. Hale announced "these ladies are here to witness your signature," and the testator proceeded to sign the will in their presence. Thus, we find no conflict in the evidence on the question of proper execution, and the trial judge properly directed a verdict in favor of the proponent on this issue.

We also find no error in the jury instructions on undue influence. The contestants argue that by telling the jury that the Court was not implying that Ms. Hale was the chief beneficiary, then the logical conclusion is that the judge was instructing them that she was not the chief beneficiary. But we believe the more plausible conclusion is that the Court was not imply-

ing anything at all, but rather, leaving that question for the jury to decide. Also, the Court stated at the outset that the only issue was whether the will was procured by Ms. Hale through the exercise of undue influence. The Court went on to state that the contestants could satisfy their burden of proof on this issue by proving either direct undue influence by Ms. Hale, or that a confidential relationship existed between the parties and that Ms. Hale was active in procuring the will and unduly benefited from it. We find nothing improper with the Court's charge to the jury.

The judgment of the Davidson County Circuit Court is affirmed, and the cause is remanded to that court for further proceedings. Costs of appeal are taxed to the appellant.

TODD, P.J., and KOCH, J., concur.